## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | Case No. 1:20-cr-27-4 (KBJ) |
| **DAESHAWN BROWN,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

On March 4, 2021, a magistrate judge ordered defendant Daeshawn Brown detained pending trial. ECF No. 54. Brown now moves to revoke the magistrate judge's order of detention under 18 U.S.C. § 3145(b). ECF No. 105. After the Government opposed Brown's motion, ECF No. 106, and Brown replied, ECF No. 111, the Court held a hearing on the motion. Upon consideration of the parties' filings, the arguments set forth at the hearing, the record herein, and the applicable legal standards, the Court finds that no condition or combination of conditions of release would reasonably assure Brown's appearance as required or the safety of the community. *See* 18 U.S.C. § 3142(f). Accordingly, the Court will **DENY** Brown's motion for revocation of the detention order, ECF No. 105.

## I. BACKGROUND

### A. The Investigation

During the summer of 2020, law enforcement conducted physical and video surveillance of suspected participants in a drug-trafficking conspiracy at several locations in Washington, D.C. ECF No. 53 at 3–4. On one occasion, law enforcement saw defendant Daeshawn Brown "with other subjects of the investigation on a sidewalk in the Shaw neighborhood" engaging in hand-to-

1

hand transactions. *Id.* at 3. On another occasion, they observed Brown and other subjects outside an apartment building passing a Ziploc bag filled with what the officer suspected to be over two ounces (56 grams) of marijuana. *Id.* Officers had also observed other subjects of the investigation engaging in hand-to-hand transactions with suspected buyers outside that same apartment. *Id.* at 3–4.

On July 21, 2020, Metropolitan Police Department officers executed a search warrant authorized by a D.C. Superior Court judge in a firearms investigation. ECF No. 53 at 4. During the execution of the warrant, officers seized Brown's cell phone. *Id.* Later, law enforcement searched Brown's phone pursuant to another warrant. *Id.* The search of Brown's phone revealed the following text messages between Brown and other individuals involving the buying and selling of narcotics:

- On July 8, 2020, Brown received a text message from a number tied to an individual ("Suspected Buyer 1") with a criminal history of controlled substances offenses asking for an "addy" (i.e., an address). *Id.* Brown responded with a location known to law enforcement for its use by subjects of the investigation for drug sales. *Id.*

- On July 8, 2020, Brown texted another number ("Suspected Buyer 2") the same address that he texted Suspected Buyer 1. *Id.*

- On July 15, 2020, Brown received a text message from another subject of the investigation telling him to "stay in the parking lot." *Id.* at 6. Brown then informed the subject of his location as "[c]oming thro 6st tunnel now." *Id.* Based on the location Brown provided in his text message, law enforcement suspected that the "parking lot" was the same one under surveillance in the investigation for suspected narcotics transactions. *Id.*

- On July 21, 2020, Brown sent a text message to Suspected Buyer 3 saying that he had better "UP" now. *Id.* at 4. "Up" is a common street name for crack or powder cocaine. *Id.* Suspected Buyer 3 responded, requesting that the "down" (a common street name for heroin or fentanyl) be "weighed out this time." *Id.* at 4–5.

- On July 21, 2020, Brown sent a text message to Suspected Buyer 2 stating that he had better "UP" and marijuana. *Id.* at 5. Brown then

2

sent text messages to several others saying that he had better "UP."
*Id.* at 5–6.

During the same month, law enforcement located photographs of Brown holding an AR-style firearm and a drum magazine. ECF No. 53 at 8–9. The photographs were posted on Instagram and show Brown posing with the firearm and the magazine. *Id.*

In the fall of 2020, law enforcement searched Brown after obtaining an arrest warrant on an unrelated charge. ECF No. 53 at 7. The search incident to arrest came about after a long series of events beginning back in January 2020. *Id.* at 6. On January 7, 2020, Brown was convicted of carrying a pistol without a license in violation of D.C. Code § 22-4504 and sentenced to six months' probation. *Id.* at 6, 10. While on probation for the gun offense, Brown was arrested for driving without a valid permit. *Id.* at 10. Shortly thereafter, Brown was charged with possessing with intent to distribute marijuana when he was found in possession of 409 grams of marijuana. *Id.*[1] Because Brown incurred two arrests while on probation for his gun offense, he was ordered to wear a GPS-monitoring device. *Id.* His supervision on the monitoring device began on May 20, 2020. *Id.* By mid-September 2020, however, Brown had incurred twenty-three infractions for failing to properly charge the device. ECF No. 50 at 5. As a result of these infractions, Brown was charged with tampering with a detection device in violation of D.C. Code § 22-1211(a)(1)(c). ECF No. 53 at 7. An arrest warrant issued. *Id.*

This brings us back to the search incident to arrest in the fall of 2020. On October 15, 2020, law enforcement observed Brown in the Shaw neighborhood of Washington, D.C., arrested him pursuant to the warrant for his tampering charge, and conducted a search incident to arrest. ECF

---

[1] The amount of marijuana found in Brown's possession (409 grams) was proffered by the Government at the motion hearing. The Government further represented at the hearing that the charge has since been dismissed.

No. 53 at 7. When they searched him, officers recovered a digital scale with white residue on it and five individually wrapped "twists" containing a white, powdery substance. *Id.* The Drug Enforcement Agency's testing confirmed 9.11 grams of fentanyl and .89 grams of cocaine in the plastic twists. *Id.*[2]

### B. Brown's Arrest and First Detention Hearing

On February 16, 2021, a grand jury returned a thirty-count Superseding Indictment charging Brown and thirteen others with offenses stemming from the group's alleged trafficking of fentanyl, crack cocaine, and oxycodone. *See* ECF No. 45. The Superseding Indictment charges Brown with three offenses: (1) conspiring to distribute and possessing with intent to distribute 400 grams or more of a mixture containing a detectable amount of fentanyl and a mixture and substance containing a detectable amount of cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(vi), 841(b)(1)(C) (Count 1), (2) unlawfully possessing with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (Count 28), and (3) unlawfully possessing with intent to distribute cocaine ("powder cocaine") in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (Count 29). ECF No. 45 at 3, 7, 15–16.

Law enforcement arrested Brown on February 24, 2021. ECF No. 93. Later that day, Brown appeared before Magistrate Judge Robin M. Meriweather for his initial appearance and arraignment. ECF No. 93; ECF Min. Entry 2/24/2021. At the hearing, Magistrate Judge Meriweather granted the Government's oral motion for a temporary hold and scheduled a detention hearing for February 26, 2021. ECF Min. Entry 2/24/2021. In its memorandum in support of pre-

---

[2] The Government stated in its memorandum in support of detention that law enforcement "confirmed the existence of 9.11 grams of Fentanyl and .89 grams of cocaine in the substance" found on Brown during the search. ECF No. 53 at 7. At the hearing, the Government clarified that it was unaware whether the 9.11 grams was the field weight, or if Brown was in possession of 9.11 grams of 100% pure fentanyl. It also clarified that the .89 grams of cocaine found was powder cocaine.

trial detention, the Government argued that the Bail Reform Act establishes a rebuttable presumption that no condition or combination of conditions can effectively ensure Brown's appearance as required or the safety of the community. ECF No. 53 at 2 (citing 18 U.S.C. § 3142(e)(3)(A)). It further argued that Brown is a danger to the community because he was charged with distributing fentanyl, an extremely dangerous substance that poses a great risk of serious bodily injury or death. *Id.* at 11. The Government also argued that Brown is dangerous because photographs of him posted on Instagram show that he was in possession of an AR-style firearm with a magazine drum at the same time he was distributing fentanyl. *Id.* Finally, the Government argued that Brown is a flight risk because the evidence against him is strong and because of his history of violating his probation. ECF No. 53 at 2, 10.

Magistrate Judge G. Michael Harvey presided over Brown's detention hearing and ordered him detained. ECF Min. Entry 2/26/2021. Magistrate Judge Harvey agreed with the Government that the Bail Reform Act establishes a rebuttable presumption that no condition or combination of conditions can effectively ensure Brown's appearance as required or protect the community. ECF No. 54 at 2 (citing 18 U.S.C. § 3142(e)(3)(A)). And he found that Brown "has not presented sufficient evidence to rebut the presumption." *Id.* Specifically, Magistrate Judge Harvey found the following considerations to support pre-trial detention: the seriousness of the drug offenses charged, the strength of the Government's proffer of evidence against Brown, Brown's failure to comply with GPS monitoring and incurring two arrests while on probation for his gun offense, and Brown's possession of an AR-style firearm with a drum magazine during the same time he is alleged to have been dealing narcotics. *Id.* at 3–4.

### C.  Brown's Motion for Pre-Trial Release

At the time Magistrate Judge Harvey ordered Brown detained pending trial, Brown did not challenge that order under 18 U.S.C. § 3145(b). *See* 18 U.S.C. § 3145(b) (allowing a defendant detained by a magistrate judge to move the court having original jurisdiction of the offense for modification or revocation of the detention order). Instead, two months later, Brown now moves for "reconsideration of bond," ECF No. 105. Judge Ketanji Brown Jackson (the judge presiding over Brown's case) subsequently ordered that Brown's motion be handled by the undersigned. ECF Min. Order 4/23/2021.

Brown's motion gives four reasons why he should be released pending trial. First, he argues that although the conspiracy charge in the Superseding Indictment "references 400 grams or more of fentanyl and cocaine," it "clarifies that Brown's conduct involved [only] a detectable amount" of a mixture containing fentanyl. ECF No. 105 at 1–2. Second, he claims that contrary to Magistrate Judge Harvey's finding in the detention order, the weight of the evidence against him on the conspiracy charge is actually quite weak. *Id.* at 5. If anything, Brown argues, the Government's evidence suggests that he merely sold drugs to a few customers. *Id.* Third, Brown argues that his failure to charge the GPS-monitoring device does not suggest that he "does not follow court orders," because the Government never offered proof that he actually traveled to locations where he was not supposed to be while under supervision. *Id.* at 10. Fourth, citing the D.C. Circuit's recent opinion in *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021), Brown argues that although the Government "may be able to identify and articulate a threat," it has not shown "by clear and convincing evidence" that Brown would pose such a threat if he were released and ordered to home confinement 24 hours per day. *Id.* at 11.

As for his conditions of release, Brown proposes that he be released on "home confinement, such that he would not be allowed to leave his house unless he had verifiable employment." ECF No. 105 at 11. Alternatively, Brown asks that he be released on home confinement 24 hours per day. *Id.* His counsel adds that Brown is not handling the "rigors of jail" very well and will agree to any conditions that the Court finds necessary to impose. *Id.* at 12. Finally, defendant notes that although he "has used marijuana," he is not "addicted to crack cocaine or heroin," and thus does not have an addiction problem that could call into question his ability to comply with conditions of pre-trial release. *Id.*

The Government opposes Brown's motion. ECF No. 106. It incorporates the arguments made in its original memorandum in support of pre-trial detention, ECF No. 54, and adds that Brown has not put forth any new evidence showing that the circumstances have changed since his first detention hearing. ECF No. 106 at 4. Once the Government filed its opposition, the Court ordered that any reply to the Government's opposition be filed by April 28, 2021. ECF No. 107. The Court also set a hearing on the motion for April 30, 2021. *Id.*

In his reply, Brown argues that reconsideration *is* proper because the D.C. Circuit's recent decision in *Munchel* clarified "the standard that a district court must follow when considering whether an accused should be held pending trial." ECF No. 111 at 1. Specifically, Brown argues that *Munchel* held that pre-trial detention is proper only upon "a showing that the defendant poses a continuing 'identified and articulable threat[.]'" *Id.* (quoting *Munchel*, 991 F.3d at 1280). Thus, to detain a defendant pending trial, Brown says, the Court must find "clear and convincing evidence" of an "identified and articulable threat" to the community. *Id.* at 2. And because Magistrate Judge Harvey "did not identify a specific articulable threat of future danger if [Brown]

were released, but instead relied on a general belief that the defendant may pose a danger if released," Brown argues, he should be released pending trial. *Id.* at 2–3.

At the hearing, the Court heard arguments and received proffers from both sides. *See United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996) (holding that both parties may proceed by proffer at a pre-trial detention hearing). Brown first clarified that his "motion for reconsideration of bond," ECF No. 105, should be construed as a motion for revocation of Magistrate Judge Harvey's order of detention pursuant to 18 U.S.C. § 3145(b). Defense counsel then emphasized that Brown is not adjusting well to jail (which is currently under lockdown for twenty-two hours per day due to the COVID-19 pandemic) and that the Court should give Brown the opportunity to try home confinement with electronic monitoring. Aside from Brown's difficulties adjusting to jail, defense counsel conceded that he has no new evidence to present that was not available or already offered at the detention hearing before Magistrate Judge Harvey.

Brown's motion is now ripe for consideration.

## II. LEGAL STANDARDS

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, thus authorizes the detention of defendants awaiting trial on a federal offense only under certain, limited circumstances. *See* 18 U.S.C. § 3142(f). First, the government may seek a defendant's pre-trial detention if the offense charged falls into any of five enumerated categories. *Id.* at § 3142(f)(1). One of those enumerated categories is for offenses "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*)." *Id.* at § 3142(f)(1)(C). Second, the government may also seek pre-trial detention—or the court may *sua sponte* hold a detention hearing to determine whether

detention is appropriate—if the case involves "a serious risk" that the defendant will flee or "will attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id.* at § 3142(f)(2).

If the Bail Reform Act authorizes pre-trial detention, a judicial officer must hold a hearing to determine whether there are conditions of release that would reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(f). At the hearing, both parties may proceed by proffer. *Smith*, 79 F.3d at 1209–10. If, after a hearing, the judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer shall order the person detained pending trial. 18 U.S.C. § 3142(e)(1). A finding that no condition or combination of conditions would reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. *Id.* at § 3142(f). And a finding that no conditions would reasonably assure the defendant's appearance as required must be supported by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

In some cases, the Bail Reform Act establishes a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). Relevant here, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" an "offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*)." 18 U.S.C. § 3142(e)(3)(A).

Once this presumption is triggered, "it imposes a burden of production on the defendant 'to offer some credible evidence contrary to the statutory presumption.'" *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)). To rebut the presumption, the defendant must "offer some credible evidence" that he will not endanger the community or flee if released. *Id.* at 32. The defendant's burden of production is not heavy, but he must still introduce some relevant evidence. *Id.* If the defendant meets his burden of production, the presumption "does not disappear entirely." *United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 388 (D.D.C. 2001)); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2020). Instead, the presumption of pre-trial detention becomes a "factor to be considered by the Court amongst the others in determining whether the defendant should be detained." *Ali*, 793 F. Supp. 2d at 388. Although the burden of production may shift, the burden of persuasion remains with the government throughout. *Cherry*, 221 F. Supp. 3d at 32.

To decide whether there are conditions that would reasonably assure the defendant's appearance as required and the safety of any other person and the community, the Bail Reform Act requires courts to consider the following factors:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including—
>
>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> **(B)** whether, at the time of the current offense of arrest, the person was on probation, on parole, or on other release

pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, state, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

If a magistrate judge orders a defendant detained pending trial, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The motion shall be decided promptly. *Id.* The court having original jurisdiction of the offense reviews the magistrate judge's order of detention *de novo* as to issues of both law and fact. *Hunt*, 240 F. Supp. 3d at 132–33.

### III. ANALYSIS

As a threshold matter, the Court notes that Brown's motion for revocation of Magistrate Judge Harvey's order of detention comes after a two-month delay. Though the D.C. Circuit has not yet considered whether motions brought under 18 U.S.C. § 3145(b) must be filed within a specific time, at least one other Circuit has held that "defendants have the responsibility to [seek review of] pretrial detention orders promptly." *Fassler v. United States*, 858 F.2d 1016, 1018 (5th Cir. 1988). This rule, however, is undercut by the language of the Bail Reform Act, which directs courts to decide the motion for review "promptly" but says nothing about when the motion for review must be filed. 18 U.S.C. § 3145(b). Given that the Bail Reform Act does not specify a time in which a defendant must seek review of a magistrate judge's order of detention, the Court will proceed to the merits of Brown's motion.

### A. The Bail Reform Act Authorizes the Government to Seek Brown's Pre-Trial Detention and Establishes a Rebuttable Presumption of Detention

The Government correctly argues that it may seek Brown's pre-trial detention under 18 U.S.C. § 3142(f)(1)(C). ECF No. 35 at 2. Section 3142(f)(1)(C) applies in cases that involve "an offense for which a maximum term of imprisonment of ten years or more is prescribed by the

11

Controlled Substances Act (21 U.S.C. § 801 *et seq.*)[.]" 18 U.S.C. § 3142(f)(1)(C). Here, Brown has been charged with, among other offenses, possessing with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a). ECF No. 45 at 15–16. This charge carries a maximum sentence of twenty years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). Thus, § 3142(f)(1)(C) authorizes the Government to seek Brown's pre-trial detention.

As both parties agree, the Bail Reform Act also establishes a rebuttable presumption that no condition or combination of conditions of release will reasonably assure Brown's appearance as required or the safety of the community. Under 18 U.S.C. § 3142(e)(3)(A), there shall be a rebuttable presumption of pre-trial detention where "the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*)[.]" 18 U.S.C. § 3142(e)(3)(A).

Here, a grand jury found probable cause to believe that Brown committed the offense of possessing with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a). ECF No. 45 at 15–16. This charge carries a maximum sentence of twenty years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). An "indictment alone [is] enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." *Smith*, 79 F.3d at 1210; *accord United States v. Little*, 235 F. Supp. 3d 272, 277 (D.D.C. 2017). And given the strong evidence proffered by the Government—including the fact that Brown was found with a substance containing 9.11 grams of fentanyl and .89 grams of powder cocaine on his person during a search incident to arrest and that law enforcement found text messages on Brown's phone discussing potential drug transactions—the Court has no reason to second guess the grand jury's determination. *See* ECF No. 53 at 4–7. Thus, the Court must presume that no condition or

combination of conditions of release will reasonably assure Brown's appearance as required or the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). To rebut this presumption, Brown must "offer some credible evidence" that he will not endanger the community or flee if released. *Cherry*, 221 F. Supp. 3d at 32.

### B. Brown Has Not Produced Evidence Sufficient to Rebut the Presumption of Detention

Brown argues that he will not pose a danger to the public or flee if released because he can stay in his family's home and "has the ability to find gainful employment, such that he could be productive while awaiting the outcome of this case." ECF No. 105 at 12. Brown also argues that although he has used marijuana, he is not addicted to crack cocaine or heroin, which could call into question his ability to comply with conditions of release. *Id.* Finally, Brown's counsel represents that Brown is "having a very hard time" in jail and will abide by any conditions of pre-trial release the Court imposes. *Id.*

Though Brown's burden of production is not heavy, this evidence is not enough. *See Hunt*, 240 F. Supp. 3d at 131–32. The facts Brown offers boil down to: (1) he will stay with his family if released pending trial, (2) he is not addicted to heroin or crack cocaine, (3) he has the ability to find legal employment, and (4) he is having a very difficult time in jail. *See* ECF No. 105 at 12. The fact that Brown has a place to live, is not addicted to heroin or crack cocaine, and could find lawful employment, however, says nothing about whether he will continue to distribute narcotics if released. As far as the Court is aware, these three facts were true at the time Brown was alleged to have been participating in the drug-trafficking conspiracy. They were also true when Brown incurred twenty-three GPS-monitoring infractions while on probation for his gun offense. *See* ECF No. 50 at 5. This evidence thus does not move the needle for Brown.

The fourth fact offered—that Brown is having a hard time in jail—could indicate that

Brown will stay out of trouble if released to avoid being sent back to jail. But this fact also cuts *against* Brown, as it suggests that he may have an incentive to flee to avoid serving substantial time in prison if convicted. *See* 21 U.S.C. §§ 841(b)(1)(A)(vi) & (b)(1)(C). Accordingly, the evidence Brown offers does not rebut the presumption of dangerousness and flight risk.

### C. Even if Brown Had Met His Burden of Production, the Bail Reform Act Would Still Require Pre-Trial Detention

Even if Brown *had* met his burden of production, the Court would nevertheless find that he must be detained pending trial. After considering the factors set forth in § 3142(g), as well as the presumption in favor of detention, the Court finds that no condition or combination of conditions would reasonably assure his appearance as required or the safety of the community. *See* 18 U.S.C. § 3142(f); *Hunt*, 240 F. Supp. 3d at 132–33 (holding that if a defendant meets his burden of production, the presumption of detention does not "disappear entirely"). In the sections that follow, the Court will first assess dangerousness and will then consider risk of flight. Though a finding of either would justify pre-trial detention, the Court finds both.

      a.  The Court Finds, by Clear and Convincing Evidence, that Brown Would Pose a Danger to the Community if Released Pending Trial

         i.  *Nature and Circumstances of the Offenses Charged*

The nature of the offenses charged strongly suggests that, if released, Brown would pose a danger to the D.C. community. The Bail Reform Act explicitly identifies offenses involving a "controlled substance" as serious in nature. 18 U.S.C. § 3142(g)(1). Here, Brown has been charged with three controlled-substance offenses: (1) conspiring to distribute and possessing with intent to distribute 400 grams or more of a mixture containing a detectable amount of fentanyl and a mixture containing a detectable amount of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(vi), 841(b)(1)(C), (2) unlawfully possessing with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and (3) unlawfully possessing with intent to

14

distribute powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). ECF No. 45 at 3, 7, 15–16. As far as controlled-substance offenses go, the crimes charged here are significant. If convicted of the conspiracy charge, Brown will be sentenced to serve, at minimum, ten years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(vi). At most, he could serve life. *See id.* Additionally, Brown's charges for possessing with intent to distribute fentanyl and possessing with intent to distribute powder cocaine both carry a maximum sentence of twenty years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). These substantial terms of imprisonment reflect Congress's appreciation for the severity of these offenses.

Moreover, this is not the case of an individual seller working alone. In addition to the charges for possessing with intent to distribute fentanyl and powder cocaine, Brown was also charged with participating in a large-scale narcotics conspiracy that is alleged to have trafficked 400 or more grams of substances containing fentanyl and crack cocaine. *See* ECF No. 45 at 3, 7. By allegedly participating in this drug-trafficking organization, Brown presumably had greater access to narcotics and buyers than if he had been working alone. Brown's alleged participation in the conspiracy charged thus strongly suggests that, if released, he would have the means to purchase and distribute narcotics and thereby endanger the D.C. community. *See, e.g.*, *United States v. Holroyd*, No. 17-cr-234-2, 2018 WL 294529, at *3 (D.D.C. Jan. 4, 2018) ("The distribution of large quantities of narcotics into the community poses a significant danger to communal safety.").[3]

---

[3] The Government argues that the photographs of Brown holding an AR-style firearm with a drum magazine further show his dangerousness. ECF No. 53 at 8–9. It argues that the "pictures on social media indicate the Defendant appeared to possess a rifle and drum magazine during the same time frame he was distributing controlled substances." *Id.* at 9. Though it is possible that the photographs posted on Instagram in July 2020 were indeed taken in July 2020, the Government has not introduced evidence of this. As a finding of dangerousness must be supported by clear and convincing evidence, *see* 18 U.S.C. § 3142(f), the Government has not provided sufficient evidence to support a finding of dangerousness based on Brown's possession of a gun. Nevertheless, because dealing narcotics *without* a weapon is still an inherently

In an attempt to minimize the seriousness of the charges against him, Brown argues that although the Superseding Indictment "references 400 grams or more of fentanyl," it alleges that Brown's conduct "involved [only] a detectable amount" of a mixture containing fentanyl. ECF No. 105 at 2. The problem with this argument is that the Superseding Indictment says no such thing. By adding "only" in brackets to the language of the Superseding Indictment, Brown makes it seem as if he could have been charged with conspiring to distribute 399 grams of powdered sugar and one gram of fentanyl. But the "detectable amount" language is commonly used in indictments, as it tracks the language of the "penalties" section of the Controlled Substances Act. *See* 21 U.S.C. § 841(b). Brown's not-so-subtle alteration of the Superseding Indictment's allegations does not persuade the Court that the offenses charged are not serious.

### ii.  *Weight of the Evidence*

Not only has Brown been charged with inherently dangerous crimes, but the strong evidence of his guilt further supports a finding that Brown's release would endanger the public.[4] The Government has proffered the following evidence of Brown's guilt: On one occasion during the summer of 2020, law enforcement observed Brown engaging in hand-to-hand transactions with other subjects of the investigation. ECF No. 53 at 3. On another occasion during that same time, law enforcement observed Brown and other subjects of the investigation congregating outside an apartment passing around a Ziploc bag filled with over two ounces of marijuana. *Id.* That

---

dangerous activity, the fact that the Government has not proven by clear and convincing evidence that Brown possessed a firearm while dealing narcotics makes no difference here. *See Carter*, 802 F. Supp. 2d at 184 ("The purchase and sale of narcotics is an inherently dangerous activity[.]").

[4] Courts in other Circuits have "cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's *guilt*, but rather must consider only the weight of the evidence of the defendant's *dangerousness*." *Hunt*, 240 F. Supp. 3d at 134 (emphases added); *see Stone*, 608 F.3d at 948; *United States v. Gebro*, 948 F.2d 1181, 1121 (9th Cir. 1991). Even under this standard, however, the Court's analysis would be the same. Because defendant has been charged with three inherently dangerous crimes, the evidence proffered by the Government in support of those charges likewise shows his dangerousness.

apartment was the site of other suspected narcotics deals observed by law enforcement, and law enforcement saw Brown maintain a presence at the apartment when suspected narcotics transactions occurred. *Id.* at 3–4.

Corroborating the Government's allegations that Brown was engaging in narcotics transactions in these locations during the summer of 2020, law enforcement found text messages on Brown's phone discussing the buying and selling of drugs. ECF No. 53 at 4–7. In July 2020, Brown received text messages from a number tied to an individual convicted of several controlled-substance offenses asking for an address. *Id.* at 4. Brown responded with an address known to law enforcement for its use by subjects of the investigation for drug sales. *Id.* During the same month, Brown also sent text messages to a handful of numbers advertising that he "got better Up," which is a common street name for powder or crack cocaine. *Id.* at 4–6. One of those individuals responded to Brown's text message saying, "Ok I need the down weighed out tho [sic]." *Id.* at 5. "Down" is a common street name for heroin or fentanyl. *Id.* at 5. And on another occasion, Brown received a text message from another subject of the investigation telling him to "stay in the parking lot." *Id.* Based on the location Brown provided in his response, law enforcement suspected that the "parking lot" was the one under surveillance in the investigation as a location of suspected narcotics transactions. *Id.*

Perhaps the strongest evidence of Brown's guilt is the evidence found on his person during the search incident to arrest conducted in October 2020. *See* ECF No. 53 at 7. There, law enforcement recovered a digital scale with white residue on it and five individually wrapped twists containing a white, powdery substance. *Id.* The substance weighed ten grams in total and tested positive for fentanyl and powder cocaine. *Id.* Taken together, the evidence gathered through

physical and video surveillance, the text messages found on Brown's phone, and the items found on Brown's person during the search incident to arrest present a strong case for Brown's guilt.

Brown argues that the evidence proffered by the Government "suggest[s], *at best*, a 'routine' situation where a person . . . sold drugs to several customers." ECF No. 105 at 5. He claims that "there does not appear to be evidence that the defendant was working with others in connection with his alleged personal drug sales." *Id.* at 6. But the evidence proffered by the Government belies this characterization. During the investigation, law enforcement observed Brown on three occasions associating with other subjects of the conspiracy investigation. They saw him (1) "maintain a presence" at an apartment building known to law enforcement as a place where subjects of the investigation commonly engaged in narcotics transactions, (2) congregating outside the same apartment building with other subjects of the investigation and passing around a Ziploc bag full of what officers suspected was over two ounces of marijuana, and (3) congregating with other subjects of the investigation on a sidewalk in Shaw while engaging in hand-to-hand transactions with suspected buyers. ECF No. 53 at 3–4. Brown also exchanged text messages with another subject of the investigation about meeting in a parking lot that law enforcement had under surveillance due to its suspected use for drug deals. *Id.* at 6. And when Suspected Buyer 1 (an individual with a history of controlled-substance offenses) texted Brown asking for an "addy," Brown responded with the address of a location where law enforcement knew other subjects of the investigation had been engaging in drug sales. *Id.* at 4. This evidence tying Brown to other subjects of the investigation hardly paints a picture, as Brown insists, of a dealer acting alone. For these reasons, the Court finds that the strong evidence of guilt further indicates Brown's dangerousness.

### iii. History and Characteristics of the Defendant

Brown's history and characteristics further support a finding of dangerousness. At age 22, Brown has only one prior criminal conviction. In January 2020, he was convicted of carrying a pistol without a license in violation of D.C. Code § 22-4504. ECF No. 50 at 5; ECF No. 53 at 6. This conviction indicates that Brown is willing to possess a firearm illegally, which suggests that he may be willing to illegally possess a gun again. Though the Government has not introduced any evidence that Brown was dealing narcotics in January 2020 when he was convicted of the gun offense, this prior gun conviction increases the risk that Brown may illegally possess a firearm again in the future. And because "drugs and guns are a dangerous combination," Brown's prior gun offense thus weighs slightly in favor of a finding of dangerousness. *Smith v. United States*, 508 U.S. 223, 240 (1993).

More relevant, however, is the Government's proffer that in May 2020, Brown was found in possession of 409 grams of marijuana. The fact that Brown was found in possession of a large quantity of a controlled substance suggests that he was trafficking that substance. *See United States v. Morris*, 977 F.2d 617, 623 (D.C. Cir. 1992). And prior trafficking, in turn, is probative of future trafficking. *Cf. United States v. Richards*, 783 F. Supp. 2d 99, 103 (D.D.C. 2011) (holding that a defendant's "history of drug-related conduct and apparent escalation with drugs provides [a] reason to believe that [the defendant] may continue to be involved with drugs if he is released before trial"). His prior possession of a significant quantity of marijuana thus adds a thumb on the scale in favor of a finding that Brown's release would pose a danger because he will continue trafficking narcotics.

*iv. Nature and Seriousness of the Danger Posed by Defendant's Release*

Finally, the nature and seriousness of the danger Brown would pose if released further weighs in favor of pre-trial detention. Brown has been charged with possessing with intent to distribute two incredibly dangerous substances: fentanyl and cocaine. ECF No. 45 at 3, 7, 15–16. Both drugs are categorized by the Controlled Substances Act as "Schedule II" substances, meaning they "ha[ve] a high potential for abuse." 21 U.S.C. § 812(b)(2)(A).

Fentanyl, a synthetic opioid, is "50 to 100 times more potent than morphine" and "50 times more potent than heroin." *Centers for Disease Control and Prevention*, Opioid Overdose, https://www.cdc.gov/drugoverdose/opioids/fentanyl.html (last visited May 2, 2021) (hereinafter "Opioid Overdose"); United States Drug Enforcement Administration, *More Than Three Million Lethal Doses of Fentanyl Seized in Minnesota Last Year*, https://www.dea.gov/press-releases/2021/03/18/more-three-million-lethal-doses-fentanyl-seized-minnesota-last-year (last visited May 2, 2021) (hereinafter "DEA Article"). In 2019 alone, more than 36,000 people died from overdoses involving synthetic opioids. DEA Article, *supra.* The risk of overdosing from synthetic opioids has grown sharply in recent years, as the deaths in 2019 marked a twelve-fold increase from deaths in 2013. Opioid Overdose, *supra; see United States v. Gordon*, 839 F. App'x 574, 575 (D.C. Cir. 2021) (per curiam) (recognizing the "increasing danger of fentanyl in the local community").

Brown's attempt to characterize the amount of fentanyl found on his person as "not very significant" is, to put it mildly, unpersuasive. *See* ECF No. 105 at 7. When Brown was searched in October 2020, law enforcement found 9.11 grams of a substance containing fentanyl. ECF No. 53 at 7. Though the Government is not currently aware of the purity rate of that substance, that amount of fentanyl is substantial. For a dose of just two *milligrams* of fentanyl is lethal. DEA

Article, *supra*. This means that even if the 9.11 grams of substance found on Brown had a purity rate of 1%, it would still contain *forty-five lethal doses* of the drug.

Cocaine likewise poses a serious risk to those who use it. DEA Article, *supra*. In 2018, 14,666 people died from overdoses involving cocaine. *Id.* And like with synthetic opioids, deaths involving cocaine are on the rise. *Id.* From 2013 to 2018, cocaine overdoses nearly tripled. *Id.* Given that those who use fentanyl or cocaine risk serious bodily injury or death, the danger posed to the D.C. community by Brown's pre-trial release would be great.

In sum, after considering the § 3142(g) factors, the Court finds, by clear and convincing evidence, that Brown would pose a danger to the D.C. community at large should he be released pending trial. *See* 18 U.S.C. § 3142(f). Specifically, it finds that Brown would pose a danger to the community by distributing fentanyl and cocaine around Washington, D.C.

### b.   The Threat of Future Narcotics Dealing is "Identified and Articulable"

In his reply brief, Brown suggests that a finding of dangerousness based on the likelihood that he will possess and distribute narcotics if released is too "generalized" to satisfy the D.C. Circuit's recent ruling in *Munchel*. ECF No. 111 at 2. In *Munchel*, the D.C. Circuit held that to order a defendant detained pending trial, "a court must identify an articulable threat posed by the defendant to an individual or to the community." *Munchel*, 991 F.3d at 1283. That "threat must be considered in context." *Id.* "Whether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the defendant." *Id.* Relevant here, the D.C. Circuit explained, "[w]hether [a] defendant poses a threat of dealing drugs, for instance, may depend on the defendant's past experience dealing, and her means of continuing to do so in the future." *Id.* (internal citations omitted).

Brown does not offer any reasons why he believes the threat of future drug dealing is too "generalized" to support pre-trial detention. *See* ECF No. 111 at 1–2. Nor could he, as the D.C. Circuit explicitly acknowledged in *Munchel* that a threat posed by a defendant released pending trial can be the "threat of dealing drugs." *Munchel*, 991 F.3d at 1283. This recognition was hardly novel. In its report on the Bail Reform Act, the Senate Judiciary Committee explained that it "intend[ed] that the concern about safety [in the Act] be given a broader construction than merely danger of harm involving physical violence" and "emphasize[d] that the risk that a defendant will continue to engage in drug-trafficking constitutes a danger to the safety of any other person or the community." 3B Wright & Miller, *Federal Practice and Procedure* § 766 (4th ed.) (quoting S. Rep. No. 98-225 at 12–13). This fear that defendants charged with serious drug offenses could endanger the community by continuing to distribute narcotics was precisely why the Bail Reform Act established a rebuttable presumption of dangerousness for defendants convicted of serious drug offenses. *Alatishe*, 768 F.2d at 370 n.13. Courts in this Circuit thus routinely recognize that the threat of continued drug dealing is a danger to the community. *See, e.g.*, *Little*, 235 F. Supp. 3d at 279; *United States v. Settles*, 12 F. Supp. 3d 56, 58–59 (D.D.C. 2013); *United States v. Carter*, 802 F. Supp. 2d 180, 184 (D.D.C. 2011); *United States v. Moorer*, 783 F. Supp. 2d 154, 160 (D.D.C. 2011).

So while *Munchel* identified new factors that courts must consider when assessing the dangerousness of defendants involved in the January 6 Capitol riots, *Munchel* did not alter the dangerousness analysis for defendants charged with controlled-substance offenses. *See Munchel*, 991 F.3d at 1284–85 (directing district courts to consider whether the defendants acted violently on January 6 as well as "the specific circumstances that made it possible, on January 6, for [the defendants] to threaten the peaceful transfer of power" when assessing dangerousness under the

Bail Reform Act). Instead, the D.C. Circuit merely recognized that dealing drugs is an "identified and articulable threat." *Munchel*, 991 F.3d at 1283 (quoting *Salerno*, 481 U.S. at 751).

Finally, to the extent that Brown believes the Court has not made the requisite findings to support its holding that Brown poses a danger to the community due to the threat of continued dealing, this argument fails too. *See* ECF No. 105 at 11. In finding that Brown would continue distributing narcotics if released pending trial, the Court considers the factors identified in *Munchel* as probative of a defendant's future dealing. As explained above, the Court relies on the strong weight of the evidence showing Brown's "past experience dealing" and connection to a drug-trafficking conspiracy, which would give him the "means of continuing to do so in the future." *Munchel*, 991 F.3d at 1283. The Court's finding that Brown's release would pose a danger to the community based on the threat of future drug dealing is thus fully consistent with the D.C. Circuit's ruling in *Munchel*.

### c. The Court Finds, by a Preponderance of the Evidence, that Brown Would Pose a Flight Risk if Released Pending Trial

Even if Brown's release would not endanger the community, the Bail Reform Act would still require Brown's pre-trial detention. Given the severity of the punishment Brown faces if convicted, the strong weight of the evidence against him, and Brown's history of failing to comply with his probation conditions, the Court finds by a preponderance of the evidence that Brown's release would pose a risk of flight. *See Xulam*, 84 F.3d at 442 (requiring a finding of flight risk to be supported by a preponderance of the evidence).

#### i. *Nature and Circumstances of the Offenses Charged*

As noted above, Brown has been charged with three very serious drug offenses. If convicted of the conspiracy charge, he will be sentenced to *at least* ten years in prison. *See* 21 U.S.C. § 841(b)(1)(A)(vi). And if convicted of possessing with intent to distribute fentanyl or

powder cocaine, he could be sentenced to up to twenty years in prison. *See* 21 U.S.C. § 841(b)(1)(C). A conviction on any of these offenses would force Brown to spend a significant portion of his life behind bars. The severity of this potential punishment, coupled with Brown's difficulty adjusting to jail, could give Brown a strong incentive to flee. *See* ECF No. 105 at 12.

        *ii.*    *Weight of the Evidence*

The strong weight of the evidence of Brown's guilt further supports a finding that Brown is a flight risk. As explained above, the Government has proffered evidence that Brown has been observed engaging in hand-to-hand transactions at locations known to law enforcement for their use by subjects of the investigation for narcotics transactions, has exchanged text messages with individuals about selling cocaine ("up") and fentanyl or heroin ("down"), and was found with a scale, fentanyl, and powder cocaine on his person. *See* ECF No. 53 at 3–10. This strong evidence against Brown further increases his risk of flight.

        *iii.*    *History and Characteristics of the Defendant*

As defense counsel candidly acknowledged at the hearing, Brown "comes in with some strikes given his history." At age 22, Brown has already displayed a disrespect for the judicial system. In January 2020, Brown was convicted of carrying a pistol without a license and sentenced to six months' probation. ECF No. 50 at 5. While on probation for that offense, he was arrested twice and thus ordered to wear a GPS monitor. ECF No. 53 at 10. In less than a one-month span, however, Brown managed to incur *twenty-three* violations for failing to charge the battery on his GPS monitor. *Id.* He did so despite agreeing that he would charge the device twice per day and being informed that, if the battery becomes low, the device will vibrate. *Id.* at 7. Brown's clear distaste for having his whereabouts monitored strongly suggests that he may flee if released

pending trial. Indeed, the recency of this behavior, which occurred less than a year ago, only strengthens that finding. *See id.*

> ### d. No Condition or Combination of Conditions of Release Could Reasonably Assure Brown's Appearance as Required or the Safety of the Community

In his motion, Brown proposes that he be released on "home confinement, such that he would not be allowed to leave his house unless he had verifiable employment." ECF No. 105 at 11. Alternatively, Brown asks that he be released on "home confinement" 24 hours per day. *Id.* Yet given Brown's history, the Court finds even home incarceration insufficient to reasonably assure the public safety and mitigate his flight risk.

After he was convicted of unlawfully possessing a pistol without a license in January 2020, Brown was sentenced to six months' probation. ECF No. 53 at 10. While on probation, he incurred two arrests, one of which was for possessing 409 grams of marijuana. *Id.* As a result of his behavior, Brown was ordered to wear a GPS monitoring device. *Id.* Within the span of one month, however, he incurred twenty-three infractions for failing to keep his device properly charged. ECF No. 50 at 5. He also violated his curfew while on probation eight times. *Id.* Eventually, in October 2020, Brown's probation was terminated unsatisfactorily and he was charged with tampering with a detection device. *Id.* at 4. Brown was under supervision for the tampering charge up until his arrest for the present offenses. *Id.* According to pre-trial services, Brown failed to report by telephone twice in the thirty-day period before his arrest. ECF No. 50 at 4.

Given Brown's recent refusal to properly charge his GPS monitoring device, comply with his curfew, or make required telephone check-ins, the Court is unpersuaded that he will comply with the conditions of home incarceration. *See* 18 U.S.C. § 3142(f). Without his willingness to keep his GPS device charged, abide by a curfew, or answer telephone check-in calls, pre-trial services will not be able to monitor his whereabouts and ensure that he is actually staying home.

Moreover, requiring Brown to stay home 24 hours per day would not reasonably assure that he does not distribute narcotics. *See Little*, 235 F. Supp. 3d at 279–80. Nothing would stop Brown from simply dealing drugs out of his house. Indeed, at the hearing, defense counsel admitted that pre-trial services cannot monitor what he does inside his home. And being under the Court's supervision certainly did not deter him from possessing controlled substances in the past, as he was caught with 409 grams of marijuana while on probation. For these reasons, the Court finds that even home incarceration would not reasonably assure the public safety or mitigate Brown's risk of flight.

## IV. CONCLUSION

For the reasons explained above, the Court finds that no condition or combination of conditions of pre-trial release could reasonably assure Brown's appearance as required or the safety of the community. *See* 18 U.S.C. § 3142(f). The Court will thus **DENY** his motion to revoke the order of detention, ECF No. 105.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: May 3, 2021

Hon. Royce C. Lamberth
United States District Judge

26